IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
STATESBORO DIVISION

```
UNITED STATES OF AMERICA      *
and THE STATE OF GEORGIA      *
ex rel. PHIL FLEXON,          *
                              *
     Plaintiffs,              *
                              *
     v.                       *
                              *    CV 615-045
MEADOWS REGIONAL MEDICAL      *
CENTER, INC. and WAYNE WILLIAMS,*
M.D.,                         *
                              *
     Defendants.              *
                              *
                              *
```

## O R D E R

In this qui tam action, Relator Phil Flexon alleges that Defendants billed the government for services Defendants did not provide and for services that were not medically necessary and that Defendant Meadows Regional Medical Center fired Relator in retaliation for his reporting Defendants' fraudulent conduct. Defendants move to dismiss Relator's claims, arguing (1) that Relator has not sufficiently alleged that Defendants submitted false claims to the government and (2) that there is no causal connection between the termination of Relator's employment and his reporting Defendants' alleged misconduct. The Court, however, is satisfied that Relator has adequately pleaded that Defendants submitted false claims to the government. And when

the complaint is viewed in the light most favorable to Relator, he has plausibly alleged a causal connection between his reporting Defendants' actions and the termination of his employment. Accordingly, the Court **DENIES** Defendants' motion to dismiss (doc. 26).

## I. Factual Background

This case arises out of Relator's employment with Meadows Regional. Relator joined the staff at Meadows Regional in 2011. (Doc. 24 ¶ 84.) Defendant Dr. Wayne Williams, an ear-nose-and-throat specialist, was also employed by Meadows Regional during Relator's tenure there. (Id. ¶ 4.)

As an ear-nose-and-throat specialist, Dr. Williams routinely operates on patients' sinuses. (Id. ¶ 52.) But according to Relator, Dr. Williams's surgeries are often a fraud. More specifically, Relator contends that Dr. Williams regularly fails to fully perform surgeries and performs surgeries that are not medically necessary. Relator alleges, for example, that J.H., a patient of Dr. Williams, needed extensive surgery in 2010. (Id. ¶ 77.) Although Dr. Williams operated on J.H., Relator contends, he did not perform the surgery he claimed to have performed. (Id. ¶ 77.) Relator also alleges, as another example, that Dr. Williams performed procedures on another patient, N.G., that were not medically

necessary.[1] (Id. ¶ 79.) Relator alleges, moreover, that Defendants submitted claims for payment for these surgeries to the government. (Id. ¶¶ 77, 79, 81.) Relator uncovered Dr. Williams's fraudulent practices when he operated on two of Dr. Williams's former patients. (Id. ¶¶ 87-88.) Relator apprised Meadows Regional of his discovery, and he claims that Meadows Regional fired him in retaliation for reporting his findings. (Id. ¶¶ 88, 91-92.)

## II. Procedural Background

Relator filed a sealed complaint in this Court in April 2015, alleging violations of the False Claims Act, 30 U.S.C. § 3729 et seq., and the Georgia Medicaid False Claims Act, O.C.G.A. § 49-4-168 et seq. (Doc. 1.) After investigating, the government declined to intervene, and the Court unsealed Relator's complaint and ordered it served on Defendants in September 2016. (Docs. 11, 12.) Defendants moved to dismiss Relator's complaint, and in response, Relator moved for leave to amend. (Docs. 17, 19.) Defendants consented and the Court granted Relator leave to file an amended complaint. (Doc. 23.) Defendants now move to dismiss Relator's claims.[2] (Doc. 26.)

---

[1] Relator also alleges that Dr. Williams improperly performed surgeries on at least ten other patients. (Doc. 24 ¶ 80.)

[2] Defendants also move to strike Relator's amended complaint. (Doc. 25.) As noted, in response to Defendants' first motion to dismiss, Relator moved for leave to amend his complaint. And Relator attached a copy of a proposed amended complaint to his motion. (Doc. 19-1.) The Court granted Relator leave to amend and ordered him to "file his Proposed First Amended

3

## III. Legal Standards

In considering a motion to dismiss under Rule 12(b)(6), the Court tests the legal sufficiency of the complaint. Scheuer v. Rhodes, 416 U.S. 232, 236 (1974). The Court must accept as true all facts alleged in the complaint and construe all reasonable inferences in the light most favorable to the plaintiff. See Hoffman-Pugh v. Ramsey, 312 F.3d 1222, 1225 (11th Cir. 2002). The Court, however, need not accept legal conclusions as true, only well-pleaded facts. Ashcroft v. Iqbal, 556 U.S. 662, 678-79 (2009).

A complaint also must "contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" Id. at 678 (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). The plaintiff is required to plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. "The plausibility standard is not akin to a

---

Complaint on or before December 9, 2016." (Doc. 23.) Relator filed an amended complaint on December 9, but the complaint contained amendments not found in the proposed complaint that he attached to his motion to amend. (See Doc. 24.) Defendants move to strike Relator's amended complaint because Relator failed to follow the Court's instructions about filing the proposed amended complaint. In response, Relator acknowledges that he further amended his complaint before he filed it and requests that the Court, to the extent necessary, treat his December 9 filing as a second motion for leave to amend. Because Defendants have not offered any reason justifying striking the complaint, the Court **DENIES** Defendants' motion to strike. And to the extent necessary, the Court **GRANTS** Relator's second motion for leave to amend and considers his December 9 complaint properly filed.

4

'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id.

Under Rule 9(b), a plaintiff alleging fraud "must state with particularity the circumstances constituting fraud . . . ." Fed. R. Civ. P. 9(b). The purpose of this rule is to alert "defendants to the precise misconduct with which they are charged . . . ." Ziemba v. Cascade Int'l, Inc., 256 F.3d 1194, 1202 (11th Cir. 2001) (citation omitted) (internal quotation marks omitted). And it requires a plaintiff to allege details of the defendant's "allegedly fraudulent acts, when they occurred, and who engaged in them." Cooper v. Blue Cross & Blue Shield of Fla., Inc., 19 F.3d 562, 568 (11th Cir. 1994) (per curiam).

## IV.  Discussion

Relator asserts claims under 31 U.S.C. §§ 3729[3] and 3730(h).[4] More specifically, Relator contends that Defendants billed the government for services that Dr. Williams did not perform and for services that were not medically necessary in

---

[3] Section 3729 defines certain actions that violate the False Claims Act, and § 3730(b) provides that "a person may bring a civil action for a violation of section 3729 for the person and for the United States Government."

[4] As noted, Relator also alleges that Defendants violated the Georgia Medicaid False Claims Act. Because Defendants argue only that this claim should be dismissed for the same reasons as Relator's False Claims Act allegations, the Court does not separately address this cause of action. See United States ex rel. Barker v. Tidwell, No. 4:12-CV-108, 2015 WL 3505554, at *3 (M.D. Ga. June 3, 2015) (noting that the False Claims Act and the Georgia Medicaid False Claims Act impose liability for the same type of conduct).

5

violation of § 3729. And he argues that Meadows Regional violated § 3730(h) because it terminated his employment in retaliation for his reporting the fraudulent practices. Defendants move to dismiss Relator's claims, arguing that he has failed to plead sufficient facts to support his claims.

**A. 31 U.S.C. § 3729**

The False Claims Act allows private citizens to file suit on behalf of the United States against anyone who "knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval." 31 U.S.C. § 3729(a)(1)(A). Thus, a False Claims Act relator must prove three things: "(1) a false or fraudulent claim; (2) which was presented, or caused to be presented, by the defendant to the United States for payment or approval; (3) with the knowledge that the claim was false." United States ex rel. Walker v. R&F Props. of Lake Cty., Inc., 433 F.3d 1349, 1355 (11th Cir. 2005).

False Claims Act complaints, moreover, are subject to Rule 9(b)'s pleading-with-particularity requirement and therefore must include "facts as to time, place, and substance of the defendant's alleged fraud" on the government. United States ex rel. Clausen v. Lab. Corp. of Am., Inc., 290 F.3d 1301, 1310 (11th Cir. 2002) (citation omitted) (internal quotation marks omitted). This is because "[t]he False Claims Act does not create liability merely for a health care provider's disregard

of Government regulations or improper internal policies unless, as a result of such acts, the provider knowingly asks the Government to pay amounts it does not owe." Id. at 1311. A relator thus is not permitted to "describe a private scheme in detail but then to allege simply and without any stated reason for his belief that claims requesting illegal payments must have been submitted, were likely submitted or should have been submitted to the Government." Id.

Here, Defendants argue that Relator has failed to plead with particularity their alleged submission of false claims to the government. Although the complaint contains details about Dr. Williams's alleged failure to perform the proper surgeries, they contend, it provides only conclusory allegations about Defendants' submission of false claims.

The Court, however, is satisfied that Relator has pleaded with sufficient detail that Defendants submitted false claims to the government. With respect to patient J.H., "a participant in the Medicare program," for instance, Relator alleges that, in August 2010, Dr. Williams purported to perform "bilateral total endoscopic ethmoidectomies and bilateral endoscopic frontal sinusotomies on J.H." (Doc. 24 ¶ 77.) But as noted above, Relator alleges that Dr. Williams did not perform these procedures. (Id.) Still, Relator contends, within a month of the operation, Defendants "knowingly and falsely caused to be

7

presented claims for payment for [the procedures] performed on J.H.[] by means of form CMS-1500[5] . . . ." (Id. (footnote added).) Relator similarly alleges that Dr. Williams fraudulently diagnosed patient N.G., also "a participant in the Medicare program," with "chronic frontal sinusitis" and unnecessarily performed "bilateral frontal endoscopic sinusotomies on N.G." (Id. ¶ 79.) Despite the fact that these procedures were not medically necessary, Relator alleges, Defendants "caused to be presented claims for payment for [the procedures] performed on N.G.[] by means of form CMS-1500 . . . ." (Id.)

These allegations are specific enough to satisfy the requirements of Rule 9(b). Relator specifies who submitted the claims, how they submitted them, when they submitted them, and the substance of the fraud. He alleges that Defendants submitted claims to the government on Form CMS-1500s following the surgeries Dr. Williams performed on J.H. and N.G., who were both Medicare participants. And he alleges that the forms requested payment for the procedures that Dr. Williams did not actually perform on J.H. and the unnecessary procedures Dr.

---

[5] A Form CMS-1500 is the form healthcare providers submit "when they seek reimbursement from a federal health insurance program." Clausen, 290 F.3d at 1306.

Williams performed on N.G.[6] Viewing these allegations together, the Court is satisfied that Relator has sufficiently alleged that Defendants submitted false claims to the government.

In short, because Relator has pleaded with particularity that Defendants submitted false claims to the government, he has adequately pleaded that Defendants violated § 3729. Accordingly, the Court **DENIES** Defendants' motion to dismiss on this issue.

### B. 31 U.S.C. § 3730(h)

Section 3730(h) provides redress for an employee who is "discharged . . . because of lawful acts done by the employee . . . in furtherance of an action under this section or other efforts to stop 1 or more violations of this subchapter." 31 U.S.C. § 3730(h)(1). To succeed on a claim under § 3730(h), an employee must show that he "was engaged in protected conduct and that [his employer] retaliated against him because of that protected conduct." Mack v. Augusta-Richmond Cty., 148 F. App'x 894, 896-97 (11th Cir. 2005) (per curiam). Thus, an employee must establish a causal connection between the protected conduct and the termination of his employment. United States v.

---

[6] The Court notes that Relator pleaded the facts surrounding the other ten surgeries with less particularity. (See Doc. 24 ¶¶ 80-81.) But Relator only needs to plead detailed information on some of his claims. See Clausen, 290 F.3d at 1312 n.21 ("Although [the relator] has provided none of these items of information here, some of this information for at least some of the claims must be pleaded in order to satisfy Rule 9(b)."). Thus, the Court need not separately address these allegations.

9

Lockheed Martin Corp., 927 F. Supp. 2d 1338, 1348 (N.D. Ga. 2013). And an employee can prove a causal connection by showing "that the protected activity and the negative employment action are not completely unrelated." Id. (citation omitted) (internal quotation marks omitted).

Defendants argue that Relator has failed to plead a causal connection between the alleged protected conduct and the termination of Relator's employment.[7] They contend that, on the face of his complaint, Relator alleges that he reported Dr. Williams's improprieties after he had been fired. Relator alleges that he first discovered Dr. Williams's misconduct in December 2014 when Relator operated on one of Dr. Williams's former patients. (Doc. 24 ¶ 87.) Then, "[s]hortly before his termination in May 2015," Relator noticed another irregularity when he examined a different former patient of Dr. Williams, and he reported his findings to Meadows Regional. (Id. ¶ 88.) But according to the complaint, "[o]n or about March 6, 2015, [Meadows Regional] sent Relator a letter terminating his Employment Agreement." (Id. ¶ 93.)

If Meadows Regional fired Relator in March 2015, Defendants argue, its decision could not have been motivated by Relator's reporting of Dr. Williams's misconduct. This is so, they

---

[7] In their motion to dismiss, Defendants argue that Relator's proposed amended complaint (doc. 19-1) lacks sufficient factual allegations about Relator's protected conduct. They do not, however, make this argument with respect to Relator's later-filed complaint (doc. 24).

10

contend, because the complaint provides that he did not report his allegations until "[s]hortly before his termination in May 2015." (Id. ¶ 88.) But viewing the allegations in the complaint in the light most favorable to Relator, as the Court must, see Am. United Life Ins. Co. v. Martinez, 480 F.3d 1043, 1057 (11th Cir. 2007), the Court cannot say that Relator has failed to allege a causal connection between his protected conduct and the termination of his employment. Although Relator alleges that he received the letter from Meadows Regional in March 2015, he also alleges that he saw one of Dr. Williams's patients and reported his findings "shortly before his termination in May 2015." (Doc. 24 ¶ 88.) That is, according to the complaint, Relator was still employed at Meadows Regional when he reported his findings on Dr. Williams. Thus, although Meadows Regional may have sent him a letter about terminating his employment agreement in March 2015, Relator has plausibly alleged that Meadows Regional did not officially fire him until after he reported Dr. Williams's misconduct. Indeed, it is not clear that Relator did not report Dr. Williams's misconduct before March 2015: the phrase "[s]hortly before his termination in May 2015" does not convey a definite time period.

In sum, because Relator has alleged that his protected conduct and the termination of his employment "are not completely unrelated," Lockheed, 927 F. Supp. 2d at 1348

11

(citation omitted) (internal quotation marks omitted), he has sufficiently pleaded a causal connection between the two events. Accordingly, the Court **DENIES** Defendants' motion on this issue.

### V.  Conclusion

The Court **DENIES** Defendants' motion to strike (doc. 25) and Defendants' motion to dismiss (doc. 26). The Court also **DENIES AS MOOT** Defendants' original motion to dismiss (doc. 17).

**ORDER ENTERED** at Augusta, Georgia this 16th day of May, 2017.

_____
J. RANDAL HALL, CHIEF JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA